UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                              MEMORANDUM OF LAW

                                                        CASE NO.: 15-Cr-00706 (VSB)

FRANCIS LORENZO et al,

    Defendant.
------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS INDICTMENT ON GROUNDS OF DIPLOMATIC IMMUNITY**

    Defendant, **FRANCIS LORENZO ("LORENZO")**, by and through undersigned counsel, files this Memorandum of Law in Support of Motion to Dismiss Indictment on Grounds of Diplomatic Immunity, and in support thereof, states as follows:

### I.  FACTUAL BACKGROUND

    1.  On September 3, 2004, LORENZO was appointed Deputy Permanent Representative[1] to the United Nations for the Dominican Republic. (See Exhibit 1, United Nations Registration of Members of Permanent Missions).

    2.  On October 5, 2015, a sealed Criminal Complaint was filed against LORENZO and six (6) co-defendants. (D.E. 1). The Criminal Complaint alleges that "[f]rom in or about 2004, up to an including the present,[2] defendant FRANCIS LORENZO has been the Deputy Permanent Representative to the United Nations for the Dominican Republic." (D.E. 1:7).

---

[1] The Criminal Complaint sub judice, (D.E. 1:7), references LORENZO's title as "the Deputy Permanent Representative[,]" which is interchangeable with the title "Deputy Ambassador" of the permanent mission of the Dominican Republic to the United Nations. (See Exhibit 2).

[2] Three days after the filing of the Criminal Complaint, on October 8, 2015, based upon the

3.       On October 6, 2015, LORENZO voluntarily surrendered to Federal authorities. Three days later, on October 9, 2015, a detention hearing was held before Magistrate Judge Henry B. Pitman who, over the Government's objection, granted LORENZO'S release on the condition that LORENZO post, <u>inter</u> <u>alia</u>, a $2 million personal recognizance bond, secured by $500,000.00 cash, the property at which his mother resides, and an additional property of a close friend.  LORENZO'S mother, brother, two sisters, as well as (5) five financially responsible persons are co-signers on the bond.  (D.E. 30).

4.       On October 20, 2015, an Indictment was returned charging LORENZO with one (1) count of conspiracy to commit bribery in violation of 18 U.S.C. § 371 (Count 1),  one (1) count of bribery in violation of 18 U.S.C. § 666(a) (Count 2), one (1) count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 6), and one (1) count of money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) (Count 7).  The conduct at issue is alleged to have been committed by LORENZO between the years 2011 – 2014, when LORENZO was the Deputy Permanent Representative to the United Nations for the Dominican Republic.

## II.     <u>RELIEF REQUESTED – DISMISSAL OF ALL CHARGES</u>

We respectfully request dismissal of the Indictment against LORENZO based on the undisputed fact that he was the Deputy Permanent Representative of the Dominican Republic to the United Nations during the period of all acts alleged in the Indictment and at the time of his arrest.

---

allegations in the Criminal Complaint, (D.E. 1), LORENZO was suspended for a period of six (6) months.  (<u>See</u> Exhibit 2, Suspension Letter, dated October 8, 2015).  As set forth more fully below, this current suspension has no bearing whatsoever on LORENZO's Motion to Dismiss. <u>See</u> <u>United States v. Kuznetsov</u>, 442 F. Supp. 2d 102, 105 (S.D.N.Y. 2006) (emphasis added) ("A court must consider a defendant's diplomatic status at the time of his arrest when determining the issue of diplomatic immunity) (citing <u>United States v. Al-Hamdi</u>, 356 F.3d 564, 569 (4th Cir. 2004)).

2

As such, LORENZO is protected from prosecution by virtue of his Diplomatic Agent Immunity. See Devi v. Silva, 861 F. Supp. 2d 135, 141 (S.D.N.Y. 2012) (citing Tachiona v. United States, 386 F.3d 205 (2004), and Brzak v. United Nations, 597 F.3d 107, 113 (2d Cir. 2010)); see also 22 U.S.C. § 254d.  The Indictment sub judice should be dismissed.  See id.

### III.   MEMORANDUM OF LAW

As Deputy Permanent Representative of Dominican Republic to the United Nations, LORENZO is cloaked with Diplomatic Agent Immunity.[3]  In 1972, the United States ratified the Vienna Convention on Diplomatic Relations ("VCDR").  The Immunity afforded to currently serving diplomats, such as LORENZO, is found under Article 31 of the VCDR,  which provides that "a diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State."  The immunity under Article 31 of the VCDR has been described as "absolute" in this Circuit.  See Brzak, 597 F.3d 107, 113 (2d Cir. 2010)  (holding that under Article 31 of VCDR, "current diplomatic envoys enjoy **absolute immunity** from civil and criminal process[.]") (emphasis added). "The standard for dismissing criminal and civil cases based on diplomatic immunity is the same." United States v. Khobragade, 15 F. Supp. 3d 383, 388 (S.D.N.Y. 2014) (citing Brzak, 597 F.3d at 113).  A Court determining the issue of diplomatic immunity "must consider a defendant's diplomatic status **at the time of his arrest**[.]"  Kuznetsov, 442 F. Supp. 2d at 105 (emphasis added) (citing Al-Hamdi, 356 F.3d at 569).

---

[3] LORENZO's Diplomatic Agent immunity is dispositive of the issue raised, and requires dismissal of the Indictment.  See Devi, 861 F.Supp.2d at 141; Tachiona, 386 F.3d at 216-20.  The Criminal Complaint references the irrelevant "official act immunity" which the Government concedes would bar prosecution—however we need not reach that class/"level" of immunity at this juncture since Diplomatic Agent Immunity controls sub judice.  (See D.E. 1:8) ("LORENZO enjoys official act immunity, which must be asserted affirmatively and provides for immunity from criminal prosecution only for official acts taken in connection with LORENZO's diplomatic position.").  This thinly veiled attempt at not referencing LORENZO's Diplomatic Agent Immunity, in an effort to prosecute LORENZO, does not overcome the well-settled law in this Circuit (and our country).

3

The purpose of "these privileges and immunities is not to benefit individuals but to ensure the efficient and effective performance of their official missions on behalf of their governments." <u>United States State Department: Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities</u>, at 5.

In accordance with the VCDR, the United States Congress enacted the Diplomatic Relations Act of 1978. The Act clearly mandates that:

> Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities, **shall be dismissed**. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure.

22 U.S.C. § 254d (emphasis added).

Indeed, the Second Circuit has held that that "diplomats accredited to the United Nations are accorded the same diplomatic immunity as diplomats accredited to the United States." <u>Devi</u>, 861 F. Supp. 2d at 141 (citing <u>Tachiona</u>, 386 F.3d at 216-20). As emphasized by the Second Circuit, this statute "makes pellucid that American courts must dismiss [an action] against anyone who is entitled to immunity under the [Vienna Convention on Diplomatic Relations] or other laws extending diplomatic privileges and immunities." See <u>Brzak</u>, 597 F.3d at 113.

Similarly, per the <u>United States State Department: Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities</u>, the immunity afforded to diplomatic agents is characterized as:

> **[T]he highest degree of privileges and immunities.** They enjoy complete personal inviolability, which means that they may not be handcuffed, arrested, or detained; and neither their property nor residences may be entered or searched. Diplomatic agents also enjoy immunity from the criminal jurisdiction of the host country's courts

>and thus cannot be prosecuted no matter how serious the offense unless their immunity is waived by the sending state.
>
>\*       \*       \*       \*
>
>The most senior representatives in these [permanent] missions to international organizations [including the United Nations] have privileges and immunities equivalent to those afforded to diplomatic agents.

Id. at 7, 14.

Deputy Permanent Representatives to the United Nations, like LORENZO, are entitled to this "highest degree" of immunity.  See Devi, 861 F. Supp. 2d at 140-141.  In Devi, two Sri Lankan nationals brought a civil action on behalf of their deceased relatives against Shavendra Silva, a general in the Sri Lankan Army, alleging that their relatives were victims of torture and wrongful killing at the hands of the Sri Lanka Army.  Id. at 138.  The defendant, Silva, moved to dismiss on grounds that as the then Sri Lankan Deputy Permanent Representative to the United Nations, he was entitled to "immediate dismissal of the lawsuit on the ground of diplomatic immunity pursuant to [the VCDR,] 22 U.S.C. § 254d."  Id. at 139.  United States District Judge J. Paul Oetken emphasized in granting Devi's Motion, "[i]t is undisputed that Silva is currently the Deputy Permanent Representative of Sri Lanka to the United Nations[,]" and that as such, "Silva is a diplomatic agent who is presumptively entitled to immunity under the Vienna Convention and to dismissal under the Diplomatic Relations Act."  Id. at 140-41.

Here, LORENZO, whose designation as an Ambassador to the United Nations has long been registered with the United States Department of State, (see Exhibit 1), holds the exact same diplomatic appointment—Deputy Permanent Representative—as Silva, the defendant in Devi.  See id.  Thus, as the Dominican Republic's Deputy Permanent Representative to the United Nation, he

5

is entitled to no less immunity as that which was granted to Silva, warranting dismissal of the Indictment.  See id.

Indeed, the following cases, where the facts did not warrant dismissal of the Indictments, further demonstrate the applicability of 22 U.S.C. § 254d as to LORENZO, and why dismissal is appropriate sub judice.  Cf. United States v. Sissoko, 995 F. Supp. 1469, 1470 (S.D. Fla. 1997) (holding that the defendant's status as "special advisor" did not entitle him to diplomatic immunity, because, inter alia "he had not been submitted to the U.S. State Department for certification."); United States v. Kostadinov, 734 F.2d 905, 911 (2d Cir. 1984) (holding that "the mere fact that [the defendant's] office is located in a building in New York which is considered part of the Bulgarian Embassy does not, without more, establish that he is one of the persons who comprise the Bulgarian mission to the United States."); United States v. Lumumba, 741 F.2d 12, 15 (2d Cir. 1984) (affirming the denial of the defendant's 22 U.S.C. § 254d motion to dismiss because, inter alia, although defendant claimed to be Vice President and Minister of Justice of the Provisional Government of the Republic of New Afrika, the "United States Department of State has not recognized the Republic of New Afrika or its Provisional Government."); United States v. Tillisy, 2009 WL 676353, at *1 (E.D. Wash. Mar. 13, 2009) (denying the defendant's 22 U.S.C. § 254d motion to dismiss because Defendant "filed no supporting evidence of his diplomatic status.").

Moreover, LORENZO is entitled to dismissal of the Indictment because he was a Diplomatic Agent "at the time of his arrest."  See Kuznetsov, 442 F. Supp. 2d 105; Al-Hamdi, 356 F.3d at 569.  The Government's decision to "shoot first" by filing a Criminal Complaint, and "ask questions" later by seeking an Indictment, neither excuses its conduct, which violated both the VCDR and the U.S. State Department Guidelines, nor negates LORENZO's entitlement to dismissal of the Indictment.  See id.  The question as to whether a defendant is "subject to the

6

criminal laws of the United States" depends on if, "at the time of his arrest,"—not at the time the Indictment was returned—the defendant possessed diplomatic immunity. See Al-Hamdi, 356 F.3d at 573. In Al-Hamdi, the defendant, the son of the Minister at the Republic of Yemen's embassy in Washington D.C., was charged with possession of a firearm by a non-immigrant alien. Id. at 567. The defendant filed a motion to dismiss the Indictment "on the belief that he was immune from prosecution" because, pursuant to Article 37.1 of the Vienna Convention, "members of the family of diplomatic agent forming part of his household shall . . . enjoy the privileges and immunities specified in Articles 29 to 36." Id. at 567, 569 (quoting Vienna Convention at art 37.1).

The Fourth Circuit made clear that "under the **plain language** of the statute [22 U.S.C. § 254d], if, **at the time he was arrested**, Al–Hamdi was entitled to diplomatic immunity under Article 37.1 of the Vienna Convention, the criminal proceedings against him **must be dismissed**." Id. at 570 (emphasis added). Ultimately, however, the Court held that the defendant was not entitled to diplomatic immunity due to a Circular Diplomatic Note issued November 15, 1989, articulating the "State Department's position that the phrase 'members of the family,' as set forth in the Vienna Convention and the Diplomatic Relations Act, did not include children over the age of twenty-one[,]" and that the defendant was over the age of twenty-one at the time of his arrest. Id. at 569.

Thus, notwithstanding LORENZO's present six (6)-month "suspension" from his position as the Deputy Permanent Representative to the United Nations, his status as a Diplomatic Agent at the time of his arrest mandates dismissal of this Indictment. See id.; see also Khobragade, 15 F. Supp. 3d at 388 (emphasizing that "[e]ven if [the defendant] had no immunity at the time of her arrest and has none now, her acquisition of immunity during the pendency of proceedings mandates

dismissal.")⁴; cf. United States v. Guinand, 688 F. Supp. 774, 775 (D.D.C. 1988) (denying the defendant's 22 U.S.C. § 254d motion to dismiss because although the acts alleged in the Indictment occurred at a time when the defendant was entitled to diplomatic immunity, the Indictment was returned subsequent to his termination as an administrative staff member of the Embassy of Peru, and his entitlement to immunity ended "at the time his duties at the Embassy were terminated[.]").⁵

That the instant matter is criminal, and not civil (as was Devi), is of no moment. As stated supra, as United States District Judge Shira A. Scheindlin has previously held, "the standard for dismissing criminal and civil cases based on diplomatic immunity is the same." Khobragade, 15 F. Supp. 3d at 388 (holding that the district court lacked jurisdiction over defendant in a criminal prosecution on the basis of diplomatic immunity) (citing Abdulaziz v. Dade County, 741 F.2d 1328, 1331 (11th Cir. 1984); Brzak, 597 F.3d at 113; 22 U.S.C. § 254d). In Khobragade, the defendant, a citizen of India, was arrested based upon a December 12, 2013, criminal complaint, "and charged with visa fraud and making false statements to the government[.]" Id. Twenty-seven (27) days later, on January 8, 2014, the defendant "was appointed a Counselor to the Permanent Mission of India to the United Nations, a position that cloaked her with full diplomatic immunity." Id. at 384.

---

⁴ It bears emphasizing the Khobragade does not stand for the premise that one's immunity at the time of arrest is **not** determinative on the issue of diplomatic immunity. Rather, Khobragade expanded the analysis of diplomatic status beyond the timing of arrest to include whether same was acquired—not lost—post-arrest, but pre-indictment. See Khobragade, 15 F. Supp. 3d at 388 n.29 (distinguishing its own facts from those of Al-Hamdi, 356 F.3d at 572, and Kuznetsov, 442 F. Supp. 2d at 102).

⁵ Unlike LORENZO, it appears the defendant in Guinand was neither arrested nor charged at a time when he was entitled to diplomatic immunity. See Guinand, 688 F. Supp. at 774 (stating that the defendant "entered into a narcotic transaction with an undercover agent" but that a Sergeant at the "the Metropolitan Police Department, with the knowledge and approval of an Assistant United States Attorney, spoke with defendant and advised him that he would be subject to immediate deportation from this country under the circumstances unless he agreed to cooperate with the police and the Drug Enforcement Administration."). However, following the defendant's "cooperation with the authorities, the Embassy of Peru terminated his employment and he was given the usual period within which to depart the country[,]" but the defendant ultimately failed to depart, resulting in the return of an Indictment for the original narcotic transaction. See id.

The next day, on January 9, 2014, "a grand jury returned the Indictment charging Khobragade with visa fraud and making false statements to the government[.]" Id.

Khobragade moved to dismiss the Indictment on the grounds of diplomatic immunity. Id. In granting the motion to dismiss, Judge Scheindlin held that diplomatic immunity is a "jurisdictional bar" to criminal prosecution. Id. Moreover, Judge Scheindlin went one step further and emphasized it "ha[d] no occasion to decide whether the acts charged in the Indictment constitute 'official acts' that would be protected by residual immunity." Id. at 388.

Thus, notwithstanding the Government's production of purportedly inculpatory discovery sub judice, LORENZO's status as a Diplomatic Agent protects him from prosecution and this Court need not analyze either the acts alleged nor the alleged "evidence" in support of same, in deciding this Motion. See id. Moreover, unlike the "eleventh-hour" immunity which arose in Khobragade, LORENZO's immunity was established over eleven (11) years ago, (see Exhibit 1), over a decade before his arrest, the filing of the Criminal Complaint, and the return of the Indictment against him sub judice. Dismissal of the Indictment against LORENZO is mandated, as he is entitled to immunity under the VCDR. See 22 U.S.C. § 254d; Brzak, 597 F.3d at 113; Tachiona, 386 F.3d at 216-20; Khobragade, 15 F. Supp. 3d at 388; Kuznetsov, 442 F. Supp. 2d at 105; Al-Hamdi, 356 F.3d at 569.

## CONCLUSION

**WHEREFORE**, Defendant, **FRANCIS LORENZO,** prays this Honorable Court grant Defendant's Motion to Dismiss the Indictment on Grounds of Diplomatic Immunity, and such other relief as is just and proper.

**GRAY ROBINSON, P.A.**
333 S.E. 2nd Avenue
Suite 3200
Miami, Florida  33131
Telephone #: (305) 416-6880
Facsimile #:  (305) 416-6887
Attorney for Defendant
Brian.Bieber@gray-robinson.com

Dated: December 15, 2015

By: s/Brian H. Bieber
BRIAN H. BIEBER
Florida Bar No. 8140
New York Attorney Reg. No. 4747507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/Brian H. Bieber
BRIAN H. BIEBER