USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA,                                               :     15-CR-706 (VSB)
                                                                        :
                        -v-                                             :     MEMORANDUM &
                                                                        :     ORDER
JOHN W. ASHE, et al.,                                                   :
                                                                        :
                        Defendants.                                     :
                                                                        :
------------------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      Before me is Defendant's Motion to Dismiss Indictment on Grounds of Diplomatic Immunity. (Doc. 115.) Defendant's motion apparently raises an issue of first impression: does a diplomat who is a naturalized United States citizen and has dual citizenship have diplomatic immunity by virtue of his position and dual citizenship without having been granted such recognition by the United States Department of State? Because the language of the Vienna Convention on Diplomatic Relations at most provides Defendant with official acts immunity, and he has not been granted additional immunity by the United States, Defendant's motion is DENIED.

## I.  Factual Background

      On or about January 26, 1985, Defendant Francis Lorenzo ("Defendant" or "Lorenzo") immigrated to the United States from the Dominican Republic. (*See* Gov. Mem. at Ex. E.)[1] On that same date, Lorenzo was "lawfully admitted to the United States for permanent residence." (*Id*.) Lorenzo later petitioned for citizenship and, on or about August 21, 1991, Lorenzo was

---

[1] "Gov. Mem." refers to the Memorandum of Law of the United States of America in Opposition to Defendant Francis Lorenzo's Motion to Dismiss the Indictment. (Doc. 127.)

naturalized as a United States citizen.  (*Id.* at Ex. F.)  Lorenzo retained his Dominican citizenship.  (Tr. 27:14-25.)[2]

Over thirteen years later, on September 3, 2004, Lorenzo was appointed by the Dominican Republic to be its Deputy Permanent Representative to the United Nations.  (D.'s Mem. at Ex. 1.)[3]  Lorenzo was subsequently recognized as such by the State Department as of October 11, 2004.  (Donovan Ltr. ¶ 1.)[4]  At no time between recognizing Lorenzo's position as a representative to the United Nations and the filing of the Indictment has the Department of State acknowledged or granted Lorenzo diplomatic immunity.  Neither the Department of State nor the United States Mission to the United Nations has ever issued Lorenzo an identification card reflecting any immunity status.  (*See* Tr. 14:14-20; 15:21-16:6; 41:3-19.)  Nor did Lorenzo enjoy any of the accoutrements that would normally accompany diplomatic immunity, such as tax exempt status, diplomatic license plates, or a State Department-issued driver's license.  (*Id.* 43:2-11.)

## II. Procedural History

On October 5, 2015, Lorenzo was charged in a criminal complaint (the "Complaint," Doc. 1) with bribery and conspiracy to do the same, in violation of 18 U.S.C. §§ 371, 666.  In the Complaint the Government acknowledged that Lorenzo "enjoys official act immunity, which must be asserted affirmatively and provides for immunity from criminal prosecution only for official acts taken in connection with [Lorenzo's] diplomatic position."  (Complaint ¶ 16.)  Three days after the filing of the Complaint, on October 8, 2015, Lorenzo was suspended from his

---

[2] "Tr." refers to the transcript of the hearing held on January 21, 2016.  (Doc. 151.)
[3] "D.'s Mem." refers to Defendant's Memorandum of Law in Support of Motion to Dismiss Indictment on Grounds of Diplomatic Immunity.  (Doc. 116.)
[4] "Donovan Ltr." refers to the letter of James B. Donovan, dated December 30, 2015, filed as an exhibit to the Government's Memorandum in Opposition to Defendant's Motion to Dismiss the Indictment on Grounds of Diplomatic Immunity.  (Doc. 127-4.)

position with the United Nations for a period of six months, which could be renewed. (*See* D.'s Mem. at Ex. 2.) On October 20, 2015, a grand jury returned an indictment charging Lorenzo, John Ashe, Ng Lap Seng, Jeff Yin, and Shiwei Yan, (the "Indictment," Doc. 38). The charges against Lorenzo included the same charges as contained in the Complaint; however, the Indictment also charged Lorenzo with money laundering and conspiracy to do the same, in violation of 18 U.S.C. § 1956. (*Id.* ¶¶ 8-10.)

On December 15, 2015, Defendant filed the present motion, with a supporting memorandum and exhibits, seeking the dismissal of the Indictment on the basis of a claimed diplomatic immunity. (Docs. 115-16.) Later that same day, I set dates for the remaining submissions on the motion. (Doc. 117.) In accordance with my Order, the government submitted its memorandum in opposition to Defendant's motion, with exhibits attached, on January 5, 2016. (Doc. 127.) Defendant filed his reply on January 12, with an attached exhibit. (Doc. 130.) On January 13, I issued an Order setting oral argument on the motion for January 21, and asking the parties to be prepared to address certain questions/issues listed in the Order at oral argument. (Doc. 131.) In a partial response to my January 13 Order, the Government submitted a letter on January 19. (Doc. 134.) I issued an Order on January 20, listing additional questions/issues that I asked the parties to be prepared to address at oral argument the following day. (Doc. 135.) I heard oral argument on January 21.[5]

### III. Legal Framework

Under the Vienna Convention on Diplomatic Relations ("VCDR"), 23 U.S.T. 3227, TIAS No. 7502, 500 UNTS 95 (entered into force for the United States Dec. 13, 1972), "diplomatic

---

[5] During oral argument defense counsel submitted ten (10) exhibits as part of his argument and in response to my January 13 and 20 Orders.

agents"[6] generally enjoy personal inviolability from "any form of arrest or detention."[7] VCDR Art. 29.[8] The Diplomatic Relations Act of 1978 (the "Act"), a statute that gives effect to the VCDR, provides that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . or under any other laws extending diplomatic privileges and immunities, shall be dismissed." 22 U.S.C. § 254d. Moreover, under VCDR Article 31, diplomatic agents generally "enjoy immunity from the criminal jurisdiction of the receiving State." VCDR Art. 31(1). With regard to diplomatic-level staff assigned to permanent missions to the UN, Section 15 of the UN HQA provides that "such resident representatives of the[] staffs [of the permanent missions] . . . shall . . . be entitled in the territory of the United States to the same privileges and immunities, subject to corresponding conditions and obligations, as it accords to diplomatic envoys accredited to it." UN HQA Section 15(4); *see Devi v. Silva*, 861 F. Supp. 2d 135, 141 (S.D.N.Y. 2012) ("[D]iplomats accredited to the United Nations are accorded the same diplomatic immunity as diplomats accredited to the United States.") (citation omitted). The purpose of diplomatic immunity, as stated in the Preamble to the VCDR, "is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States." 23 U.S.T. 3227, 500 U.N.T.S. 95, Preamble, cl. 4.

---

[6] "Diplomatic agent" is the term for ambassadors and the other diplomatic officers who generally have the function of dealing directly with host-country officials.

[7] In addition to the VCDR, the rules governing the immunity accorded to diplomatic agents assigned to the permanent missions to the United Nations ("UN") are also embodied in the United Nations Headquarters Agreement ("UN HQA"), Stat. 3416, 11 U.N.T.S. 11 (entered into force Nov. 21, 1947). The United States is a party to both of these treaties.

[8] In addition to the statutes and treaties, guidance has been provided by the United States Department of State (the "Department of State") and the United Nations itself. The Department of State has documented its guidance in the publication, *Diplomatic and Consular Immunity: Guidance for Law Enforcement*, Department of State Publication (2015), available at http://www.state.gov/documents/organization/150546.pdf (the "State Department Publication"). The United Nations has published its guidance on questions of immunity in its "Manual of Protocol," (the "United Nations Manual"), available at https://www.un.int/protocol/pm/menus-3-6.

The Second Circuit has recognized that under the VCDR, "current diplomatic envoys enjoy absolute immunity from civil and criminal process." *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010), *cert. denied*, 562 U.S. 948 (2010); *see also Tachiona v. United States*, 386 F.3d 205, 216 (2d Cir. 2004) ("With limited exceptions, [the VCDR] broadly immunizes diplomatic representatives from the civil jurisdiction of the United States.").

However, United States permanent residents and nationals, including citizens born in the United States and naturalized citizens, are treated differently under the law than non-nationals. Article 38 of the VCDR eliminates diplomatic immunity from criminal prosecution for United States permanent residents and nationals serving as diplomatic agents stating that "[e]xcept insofar as additional privileges and immunities may be granted by the receiving State, a diplomatic agent who is a national of or permanently resident in that State shall enjoy only immunity from jurisdiction, and inviolability, in respect of official acts performed in the exercise of his functions."  VCDR Art. 38(1).

**IV.    Discussion**

Lorenzo argues that "based on the undisputed fact that he was the Deputy Permanent Representative of the Dominican Republic to the United Nations during the period of all acts alleged in the Indictment" he has diplomatic immunity and therefore the Indictment must be dismissed as it relates to him.  (D.'s Mem. at 2-3.)  This contention is without merit.  Nothing in the VCDR or federal statutes giving effect to the VCDR entitles Lorenzo to immunity from criminal prosecution.  In fact, the text of the VCDR supports the contention that Lorenzo may only be entitled to official acts immunity.

Although Lorenzo cites generally to the VCDR and the Diplomatic Relations Act of 1978 as support for his contention that he is entitled to diplomatic immunity, those citations are

5

misplaced.  It is not disputed that, under the VCDR and the Act, a diplomat or a member of a permanent United Nations Mission—like Lorenzo—who is not a United States citizen or a permanent resident of the United States would be entitled to diplomatic immunity.  (D.'s Mem. at 3; Gov. Mem. at 2-3.)  However, Article 38 of the VCDR eliminates diplomatic immunity from criminal prosecution for United States permanent residents and nationals serving as diplomatic agents.  VCDR Art. 38(1) ("[e]xcept insofar as additional privileges and immunities may be granted by the receiving State, a diplomatic agent who is a national of or permanently resident in that State shall enjoy only immunity from jurisdiction, and inviolability, in respect of official acts performed in the exercise of his functions.")  Consistent with this provision, the United States does not confer diplomatic immunity on its own citizens who are diplomats in a foreign government's permanent mission to the United Nations.  (*See* Donovan Ltr. ¶ 2.)  Rather, United States citizens who are diplomats assigned to the permanent missions of foreign governments to the United Nations enjoy immunity only for their official acts.  (*Id.*) ("It is the policy and practice of the United States[] that United States citizens working in a diplomatic capacity for a foreign government's permanent mission at the UN enjoy only official acts immunity, not diplomatic immunity.")[9]  Therefore, the text of the VCDR appears to dictate that, as a naturalized citizen of the United States, Lorenzo is only entitled to, at most, official acts immunity.

This interpretation is supported by statements by the United States concerning the criteria to obtain diplomatic privileges and immunities in this country and by the United Nations.  The

---

[9] "[T]he executive branch's interpretation of a treaty 'is entitled to great weight.'" *Brzak v. United Nations*, 597 F.3d at 111.  Lorenzo argues that the letter from James B. Donovan is "just his opinion" and that I have the power to find that he has diplomatic immunity.  (Tr. 8:13-16.)  While it is my responsibility to determine whether or not Lorenzo has diplomatic immunity under the relevant treaties and statues, the letter submitted by Mr. Donovan sets forth the executive branch's interpretation of the VCDR and is therefore more than just his opinion.  I am entitled to and do rely on that interpretation as part of the basis for my ruling that Lorenzo does not have diplomatic immunity.

United States uses circular diplomatic notes to advise Permanent Missions to the UN of the requirements to obtain diplomatic privileges and immunities in the United States.  (*See* Donovan Ltr. ¶ 3.)  In a note dated January 27, 2010, (*see id*. at 3-4), the United States Mission to the UN informed all other missions that, to obtain diplomatic privileges and immunities in the United States under Section 15 of UN HQA, a diplomatic envoy must, among other things, "be a national of the Member State," and "possess an appropriate non-immigrant status in the United States." (*Id*.)  As a United States citizen, Lorenzo does not possess "an appropriate non-immigrant status," such as a visa-holder,[10] and therefore does not meet the criteria set forth in the diplomatic note.  The United Nations, as part of its guidance on questions of immunity, has acknowledged that United States citizens and permanent residents are excluded from the categories of individuals entitled to diplomatic privileges and immunities.  *See* United Nations Manual, Section VI ("It is important to note that diplomatic privileges and immunities are not granted to members of diplomatic personnel who are citizens or permanent residents of the United States.").

Lorenzo asserts that because he is a dual citizen of the United States and the Dominican Republic, I am not precluded from finding he has diplomatic immunity.[11]  Specifically, Lorenzo asserts that because dual citizenship is not explicitly provided for in the VCDR, the Act, or authorities governing diplomatic immunity, he is not precluded from arguing he is entitled to diplomatic immunity on the basis of his Dominican citizenship.  (*See* Tr. 15:13-20.)  Lorenzo's assertion is misguided.  As an initial matter, to the extent that Lorenzo is arguing that the absence

---

[10] The Second Circuit has noted that such non-immigrant status is, without more, insufficient, since a visa "does not necessarily confer diplomatic immunity." *United States v. Kostadinov*, 734 F.2d 905, 912 (2d Cir.1984) (denying diplomatic immunity to an employee of the Bulgarian Ministry of Foreign Trade who had been issued an A–1 visa but never received a diplomatic identity card and his name never appeared on lists prepared by the United States government of people with diplomatic immunity).

[11] It is uncontested that Lorenzo is a United States citizen, and enjoys dual citizenship with the Dominican Republic. (*See* Tr. 15:17-20; Tr. 27:14-25; Gov. Mem. at 5.)

of an explicit reference to or discussion of dual citizenship in the relevant treaties, statutes, and other authorities means that he is entitled to diplomatic immunity, I reject that argument out of hand, and hold that the absence of such discussion cannot result in a grant of diplomatic immunity. Although the VCDR does not use the term "dual citizen," it does not follow that such individuals are not covered by its language. Lorenzo—as a dual citizen—is part of a group that is subsumed within "nationals" and is therefore covered by the language of the VCDR. In other words, the term "nationals" includes naturally born citizens, naturalized citizens, and dual citizens. Consistent with this reading, as noted, nationals and permanent residents of the United States are not normally entitled to diplomatic immunity. The VCDR makes it clear that in order for someone in Lorenzo's position to have more than official acts immunity, the receiving state—here the United States—would have to take some affirmative step. VCDR Art. 38(1) ("[e]xcept insofar as additional privileges and immunities may be granted by the receiving State . . ."). Lorenzo concedes that no such affirmative steps have been taken and that no "privileges and immunities" have been granted to him. (Tr. 15:21-16:6.)

In any event, while it is true that the VCDR does not specifically mention or use the term "dual citizen" or "dual citizenship," let alone discuss how such status might affect the grant of diplomatic immunity, it is similarly true that the statute makes no exception for dual citizenship. Lorenzo does not identify, and I have not found, any case in which a United States citizen who is also a citizen of another country has been granted diplomatic immunity.[12] (*See* Tr. 12:8-17.)

---

[12] Lorenzo argues that "despite its bold assertions regarding the straightforwardness of the law based on the 'plain language' of the VCDR, the Government could not cite a single case—in all of American jurisprudence—rejecting a defendant's Diplomatic Agent immunity claim on the basis that s/he was a legal permanent resident of [both the] United States and another country while serving as a Diplomatic Agent to the United Nations." (Defendant's Reply to Government's Response in Opposition [D.E. 127] to Defendant Lorenzo's Motion to Dismiss the Indictment on Grounds of Diplomatic Immunity [D.E. 115] ("Reply," Doc. 130) at 3.) I consider the fact that neither party has been able to find case law addressing the issue presented here to be a neutral fact, not weighing in favor of nor against finding diplomatic immunity. However, an argument could be made that the issue has never been addressed

Since none of the cases cited by Lorenzo concern a United States citizen being granted or denied diplomatic immunity or even official acts immunity, they are inapposite to the current inquiry.[13] Furthermore, as Lorenzo concedes, there is absolutely no indication that the Department of State contemplated making an exception to its standard practice of not affording immunity to United States citizens for him.  (Tr. 14:10-17; 43:2-11.)

In addition, the interpretation suggested by Lorenzo would render Article 38 meaningless as it relates to permanent residents.  Lorenzo's argument that he is entitled to diplomatic immunity is based on the fact that he retained his Dominican citizenship.  However, the same would hold true for a diplomat who was a permanent resident of the United States.  Lorenzo's interpretation would make a nullity of Article 38's limitation of immunity for permanent residents to official acts immunity.  Such a reading is contrary to the dictates of statutory interpretation.  *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.  A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." (internal quotation marks and citations omitted)).

Citizens of the United States are not immune from criminal prosecution without the explicit permission of the Government, and then only for specific offenses.  *See, e.g.*, *Kastigar v.*

---

by courts because the language of the VCDR is clear that dual citizens cannot have diplomatic immunity and therefore diplomats with dual citizenship have not sought to question their status.

[13] Lorenzo's citation to *United States v. Guinand*, 688 F. Supp. 774 (D.D.C. 1988), does not support his argument that he entitled to diplomatic immunity.  The defendant in *Guinand* became a permanent resident alien after his duties at the Embassy of Peru were terminated, after his cooperation with authorities, and before his indictment on narcotics charges.  As an initial matter, the court in *Guinand* rejected the defendant's claim of entitlement to diplomatic immunity.  *Id.* at 776-77.  In addition, without discussing the fact that the defendant was a citizen of Peru and a permanent resident alien of the United States, the *Guinand* court held that "although he presently has the status of permanent resident alien, that status affords him no immunity from prosecution."  *Id*. at 777.  Therefore, *Guinand* appears to support a finding that Lorenzo does not have immunity from prosecution.

*United States*, 406 U.S. 441, 444-47 (1972) (discussing the history of statutes granting immunity in exchange for testimony in the United States).  Lorenzo's interpretation would effectively mean that he could commit any crime as a citizen of the United States but would be beyond the jurisdiction of the Government for criminal prosecution.  At the same time, Lorenzo would not be subject to expulsion from the United States, as a non-national diplomat with diplomatic immunity would upon being accused of criminal acts.  This interpretation would also cede to the Dominican Republic the right to determine whether or not a United States citizen could face criminal prosecution.  In other words, Lorenzo is advocating that diplomats who have dual citizenship would have a "get out of jail free card" that could only be revoked by the diplomat's native country.  This result is also antithetical to the purpose that diplomatic immunity "is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States."  23 U.S.T. 3227, 500 U.N.T.S. 95, Preamble, cl. 4.  I decline to adopt an interpretation that would lead to these anomalous results.[14]

## V.     Conclusion

In light of the fact that Lorenzo is a United States citizen, the VCDR's clear language granting to United States citizens only official acts immunity, and an utter lack of evidence that would support a finding that Lorenzo has been granted diplomatic immunity by the United States, Lorenzo is not immune from criminal prosecution.[15]  *See* VCDR Art. 38(1).  Therefore,

---

[14] Although the United States could file a suit seeking the denaturalization of Lorenzo, the commission of a crime is not a basis to revoke a naturalized citizen's citizenship.  *See* 8 U.S.C. § 1451 (providing that the United States may bring proceedings seeking denaturalization of a citizen only "on the ground that . . . naturalization [was] illegally procured or [was] procured by concealment of a material fact or by willful misrepresentation," or for any "refusal . . . to testify as a witness in any proceeding before a congressional committee concerning his subversive activities").

[15] Lorenzo argues that the status of his position with the United Nations—namely, whether he was suspended or terminated from that post—is material to whether the claimed diplomatic immunity covered the time spanning the allegations in the Complaint.  Because I find that Defendant was never afforded diplomatic immunity, this argument is of no moment and I need not, and do not, consider it here.  However, based upon an exhibit presented to me by Lorenzo during the hearing, I note that the United States is of the view that if Lorenzo's suspension is lifted, the Dominican Republic would have to request privileges and immunities for Lorenzo anew.  (Defendant's Ex. 4 at 2

Defendant's motion to dismiss the indictment on the grounds of diplomatic immunity is

DENIED.


SO ORDERED.

Dated: February 4, 2016
       New York, New York

                                               _____
                                               Vernon S. Broderick
                                               United States District Judge

---

("The Permanent Mission of the Dominican Republic is further advised that if in the future it seeks privileges and immunities for Mr. Lorenzo it should submit a new notice of accreditation.")  In other words, his status would not automatically return upon the lifting of the suspension.  This interpretation is consistent with the Department of State's assertion that, from its perspective, Lorenzo was terminated from his position.