

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Robert D. Balin**
(212) 489-8230 tel
(212) 489-8340 fax

robbalin@dwt.com

March 1, 2019

<u>**VIA ECF**</u>

Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, New York 10007

> Re:   *United States of America v. John Ashe, et al.*, No. 1:15-cr-00706 (VSB)
>         Letter Motion Requesting Order Unsealing Grand Jury Materials
>         <u>Related to Wire Transfers from Dr. Chau Chak Wing to John Ashe</u>

Dear Judge Broderick:

This firm submits this letter motion pursuant to Rule 3 of Your Honor's Individual Rules & Practices in Criminal Cases on behalf of Fairfax Media Limited ("Fairfax") and the Australian Broadcasting Corporation ("ABC") (collectively, the "News Organizations"). As Your Honor is aware, the News Organizations filed a prior letter motion (Doc. No. 857) requesting access to certain materials from the above-referenced action (the "Ashe Proceedings") that are critical and needed by the News Organizations to adequately defend themselves in an ongoing Australian libel proceeding brought by Chinese-Australian Dr. Chau Chak Wing against the News Organizations (the "Australian Libel Proceeding"). In the Australian Libel Proceeding, Dr. Chau alleges that a television news program co-produced by the News Organizations falsely reported that Dr. Chau "paid a $200,000 bribe to the President of the General Assembly of the United Nations [Ashe]." Amended Statement of Claim ¶ 5(g), *Chau Chak Wing v. Australian Broad. Corp., et al.*, File No. NSD1088/2017 (New South Wales Registry – Fed. Ct. of Australia), attached hereto as Attachment 1, Exhibit A.[1]

---

[1] **Attachment 1** hereto contains a copy of the News Organizations' December 12, 2018 *Touhy* Request to the United States Attorney's Office for the Southern District of New York. Attached thereto as <u>Exhibit A</u> is a copy of the Amended Statement of Claim in *Chau Chak Wing v. Australian Broad. Corp., et al.*, File No. NSD1088/2017 (New South Wales Registry – Fed. Ct. of Australia). Attached thereto as <u>Exhibit B</u> is a redacted version of the diplomatic note from the U.S. State Department to the Embassy of Antigua and Barbuda, dated January 6, 2016, which redacted version was attached to the filed Sentencing Submission of Shiwei Yan as Exhibit #3 in the Ashe Proceedings (PACER Doc. No. 219-4) (the "Diplomatic Note"). Attached thereto as <u>Exhibit C</u> is a copy of the Complaint in the
4849-1939-7256v.1 0112212-000001

| Anchorage | New York | Seattle |
| Bellevue | Portland | Shanghai |
| Los Angeles | San Francisco | Washington, D.C. |

www.dwt.com

Hon. Vernon S. Broderick
March 1, 2019
Page 2

We now write to the Court for two purposes. ***First***, the News Organizations write to withdraw their prior letter motion dated August 29, 2018 (Doc. No. 857) requesting various materials disclosing the name of the co-conspirator identified as "CC-3" in the Complaint in the Ashe Proceedings. Since the News Organizations filed their August 29, 2018 Letter Motion, the United States Attorney's Office for the Southern District of New York has released various materials to the News Organizations in response to a December 12, 2018 *Touhy* Request. The materials produced by the U.S. Attorney's office establish that Dr. Chau is in fact the individual identified in the Ashe Complaint as "CC-3." *See* Attachment 2, Exhibit 3.[2]

***Second***, the News Organizations write to request that the Court issue an Order pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i) unsealing a narrow category of materials obtained via grand jury subpoena in the Ashe Proceedings by the United States Attorney's Office for the Southern District of New York. Specifically, for the reasons set forth below, we respectfully request that the Court unseal all bank records, wire records, or other documents evidencing the $200,000 wire transfer payment made by Dr. Chau or his company to Ashe as set forth in Paragraph 49 (including subpart(f)) of the Complaint in the Ashe Proceedings (Doc. No. 1). The disclosure of these wire transfer records to the News Organizations is of paramount importance to the News Organizations' defense in the Australian Libel Proceedings, and would both avert a grave injustice and vindicate the free press from any attempt by Dr. Chau to silence truthful journalism.

## FACTUAL BACKGROUND

### A.    The Ashe Proceedings and CC-3

On October 5, 2015, the United States Attorneys' Office for the Southern District of New York filed a Complaint in the action *United States of America v. John Ashe, et al.*, 1:15-cr-00706-VSB (S.D.N.Y.) alleging that various individuals – including, among others, Shiwei "Sheri" Yan and Heidi Piao – were involved in a conspiracy to bribe then-President of the United Nations General Assembly John Ashe. Attachment 2, Exhibit 1. Among the various overt acts outlined in the Complaint, the Government alleged, "Yan and Piao arranged for a $200,000 wire to a bank account belonging to the President of the UN General Assembly [Ashe] from another

---

criminal action *United States of America v. John Ashe, et al.*, 1:15-cr-00706-VSB (S.D.N.Y.) (the "Complaint"). Attached thereto as <u>Exhibit D</u> is a list of "Key documents Sought by Requesters."

[2] **Attachment 2** hereto contains a copy of the Affidavit of Assistant United States Attorney Daniel C. Richenthal dated February 19, 2019, responding to the News Organizations' December 12, 2018 *Touhy* Request. Attached thereto as <u>Exhibit 1</u> is a copy of the criminal Complaint in the Ashe Proceedings. Attached thereto as <u>Exhibit 2</u> are "redacted, but otherwise true and correct copies of the emails (the "Emails") referred to in Paragraph 49 of the Complaint." Attachment 2, ¶ 4. Attached as <u>Exhibit 3</u> thereto is "a redacted, but otherwise true and correct, copy of the Diplomatic Note with Attachments A and B, as obtained by this Office from the United States Department of State and produced in discovery to those defendants in United States v. Ashe, et al., who requested discovery . . . [with] the name of the individual referenced in paragraph 9 of Attachment A . . . unredacted." Attachment 2, ¶ 9.

Hon. Vernon S. Broderick
March 1, 2019
Page 3

co-conspirator not named as a defendant herein in exchange for the President attending a private conference in his official capacity." *See* Attachment 2, Exhibit 1 ¶ 3(d).  The Complaint identifies this other co-conspirator only as "CC-3" and describes him as a "Chinese real estate developer." Attachment 2, Exhibit 1 ¶ 49(f) ("On November 4, 2013, ASHE's PGA account-2 received a $200,000 wire from China from one of CC-3's companies.").

On January 20, 2016, Yan pled guilty to one count of bribery set forth in a Superseding Information; and on July 29, 2016, Yan was sentenced to 20 months in prison.[3]  On January 14, 2016, Piao pled guilty to five counts (conspiracy to commit bribery; bribery; conspiracy to commit money laundering; money laundering; and willful failure to file reports of foreign bank and financial records) set forth in a  Superseding Information; and Piao is scheduled to be sentenced on May 24, 2019. *See* Doc. No. 892.  These bribery conspiracy allegations in the Complaint do not relate to any other defendant except John Ashe, who passed away on June 22, 2016.

### B.     The News Organizations Reveal CC-3 to be Dr. Chau Chak Wing, Who Promptly Files a Defamation Action in Australia

On June 5, 2017, the Australian television news magazine *Four Corners* broadcasted an episode, jointly produced by Fairfax and the ABC, titled "Power and Influence."  The newscast reported that "CC-3," the unnamed co-conspirator, whose company allegedly paid $200,000 to Mr. Ashe to attend the private conference in China, was Dr. Chau Chak Wing.  Specifically, the program reported that "[t]he FBI alleged that Yan bribed the UN General Assembly President to speak at [the luxury Imperial Springs Resort], at a conference hosted by Dr. Chau.  A sealed indictment from a New York Court against Sheri Yan refers to Dr. Chau using a codename – CC-3."  The newscast made clear that, while "under U.S. bribery law it was illegal for Ashe as [a] UN official to receive this payment," "[t]here is no suggestion[] Dr. Chau knew it was illegal."[4]  Nonetheless, Dr. Chau sued the News Organizations in the Federal Court of Australia claiming, among other things, that the newscast falsely states that he paid a $200,000 bribe and that he was knowingly involved in the corrupt scheme.  Attachment 1, Exhibit A ¶ 5(g) and (h).[5]

---

[3] *See* Press Release, Dep't of Justice, U.S. Attorney's Office, Southern District of New York, *Former Head of Foundation Sentenced to 20 Months in Prison for Bribing Then-Ambassador and President of United Nations General Assembly* (July 29, 2016), https://www.justice.gov/usao-sdny/pr/former-head-foundation-sentenced-20-months-prison-bribing-then-ambassador-and-president.

[4] "Power and Influence," *Four Corners* (June 5, 2017), http://www.abc.net.au/4corners/power-and-influence-promo/8579844.

[5] We further note that on May 22, 2018, Andrew Hastie, Chairman of the Joint Committee on Intelligence and Security for Australian Parliament, stated on the floor of Parliament that Dr. Chau has ties to the Chinese Communist Party and that Dr. Chau was the unindicted co-conspirator "CC-3" referenced in the Complaint.  MP Hastie's public statement disclosing that "CC-3" is Dr. Chau has been widely reported in Australia, the United States and around the world. *See, e.g.*, Emily Baumgaertner and Jacqueline Williams, "In Australia, Fears of
4849-1939-7256v.1 0112212-000001

Hon. Vernon S. Broderick
March 1, 2019
Page 4

In defending Dr. Chau's libel suit, the News Organizations have asserted that the challenged statements in the *Four Corners* episode (including the statement that Dr. Chau's company paid $200,000 to Ashe) are true. However, prior to Dr. Chau producing documents in discovery that the News Organizations expected would establish the truth of the *Four Corners* report, the Australian Federal Court issued an order striking the News Organizations' truth defense for failure to set forth the basis for its defense with the requisite precision. A copy of the decision striking the News Organizations' truth defense is annexed hereto as Attachment 3.

The News Organizations are appealing the lower court's decision to strike their truth defense on the ground that striking their ability to prove truth is a manifest injustice. A copy of the News Organizations' appellate submission is annexed hereto as Attachment 4. Should the News Organizations present sufficient proof on appeal, the News Organizations are confident that the appellate court will overturn the lower court's decision and restore their truth defense.

### C. The News Organizations Have Established that CC-3 is Dr. Chau Chak Wing and Now Seek Proof that Dr. Chau Paid Ashe

Although the Australian trial court struck out the News Organizations' truth defense thus cutting off any avenue for discovery in Australia, the News Organizations have continued to pursue proof of the truthfulness of their news report. On December 12, 2018, the News Organizations submitted a *Touhy* Request to the United States Attorney's Office for the Southern District of New York ("USAO") pursuant to the Department of Justice *Touhy* regulations, 28 C.F.R. § 16.21 *et seq.*, seeking the disclosure of materials that would reveal the identity of unindicted co-conspirator CC-3. *See* Attachment 1. Specifically, the News Organizations requested the following:

- An unredacted version of the diplomatic note from the U.S. State Department to the Embassy of Antigua and Barbuda, dated January 6, 2016, a redacted version of which was attached to the filed Sentencing Submission of Shiwei Yan as Exhibit #3 in the Ashe Proceedings (PACER Doc. No. 219-4) (the "Diplomatic Note"). Specifically, Requesters seek release of a copy of the Diplomatic Note from which is removed the redaction of the name of "CC-3" that appears in paragraph number 9 on page 6 of the exhibit that was filed by Shiwei Yan.

---

Chinese Meddling Rise on U.N. Bribery Case Revelation," N.Y. Times (May 22, 2018), available at https://www.nytimes.com/2018/05/22/world/australia/bribery-un-china-chau-chak-wing.html; Amy Remeikis and Katharine Murphy, "Chinese Australian billionaire involved in UN bribery case, MP claims," The Daily Mail (May 22, 2018), available at https://www.theguardian.com/world/2018/may/22/chinese-australian-billionaire-involved-in-un-bribery-case-mp-claims; Associated Press, "Australian lawmaker accuses billionaire in UN bribe scandal," Fox News (May 23, 2018) available at http://www.foxnews.com/world/2018/05/23/australian-lawmaker-accuses-billionaire-in-un-bribe-scandal.html.

4849-1939-7256v.1 0112212-000001

Hon. Vernon S. Broderick
March 1, 2019
Page 5

- All e-mails, bank records, wire transfer records, and other documents obtained via search warrants, subpoenas (excluding grand jury subpoenas), or other discovery methods from Defendant Shiwei Yan, Defendant Heidi Hong Piao, Defendant John Ashe, or any other individual or institution, that evidence the $200,000 wire transfer payment made by one of "CC-3's" companies to Ashe, referenced in Paragraph 49 (including subparts (a)-(g)) of the Complaint in the Ashe Proceedings (PACER Doc. No. 1).

- All other documents in the possession of the U.S. Attorney's Office for the Southern District of New York that identify the name and activities of the person referred to as "CC-3" in Paragraph 49 (including subparts (a)-(g)) of the criminal Complaint in the action United States of America v. John W. Ashe, et al., No. 1:15-cr-00706-VSB (S.D.N.Y.)

- Deposition testimony or a mutually acceptable sworn statement from Senior Trial Counsel and Assistant U.S. Attorney Daniel C. Richenthal, or another equally competent representative of the U.S. Attorney's Office for the Southern District of New York, authenticating the documents itemized in paragraphs 2(a) through 2(c) above [the aforementioned paragraphs], and confirming that Dr. Chau Chak Wing is the CC-3 referenced in the Complaint in the Ashe Proceedings.

*See* Attachment 1, Affidavit of Robert D. Balin, dated December 12, 2018 ("Balin Touhy Aff."), ¶ 2. Attached as Exhibit D to the Balin Touhy Affidavit was a list of "Key documents Sought by Requesters" that listed a variety of e-mail communications, the Diplomatic Note, and the "Bank and/or wire transfer records of $200,000 transfer from one of CC-3s companies to one of John Ashe's UN GA bank accounts." Attachment 1, Exhibit D at 3.

On February 19, 2019, the USAO responded to the News Organizations' *Touhy* Request with an Affidavit from Mr. Richenthal attaching various documents. *See* Attachment 2. Among the documents released were "redacted, but otherwise true and correct copies of the emails (the "Emails") referred to in Paragraph 49 of the Complaint" (Attachment 2 ¶ 4, Exhibit 2), and "a redacted, but otherwise true and correct, copy of the Diplomatic Note with Attachments A and B, as obtained by this Office from the United States Department of State and produced in discovery to those defendants in *United States v. Ashe, et al.*, who requested discovery . . . [with] the name of the individual referenced in paragraph 9 of Attachment A . . . unredacted." Attachment 2 ¶ 9, Exhibit 3. The USAO's disclosures establish conclusively that Dr. Chau Chak Wing is the CC-3 referenced in the Complaint in the Ashe Proceedings. Further, the e-mail communications establish that Yan and Piao represented to Ashe that they spoke on behalf of Dr. Chau and that Dr. Chau would pay $200,000 in exchange for Ashe appearing at a function at Dr. Chau's Guangzhou resort. The emails also establish that Ashe confirmed to Yan and Piao that he had received the $200,000 payment.

4849-1939-7256v.1 0112212-000001

Hon. Vernon S. Broderick
March 1, 2019
Page 6

The one element of proof that the USAO did not provide was evidence of the actual wire transfer of $200,000 from Dr. Chau's company to Ashe. We understand that the USAO did not provide this evidence because the USAO obtained the evidence by way of grand jury subpoena, and materials obtained via a grand jury subpoena generally are deemed secret under Fed. R. Crim. P. 6. These wire transfer records are crucial to the News Organizations' ability to establish their truth defense in the Australian Libel Action. The News Organizations now respectfully request that, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i), the Court unseal the documents evidencing the wire transfer from Dr. Chau's company to Ashe.

## ARGUMENT

### A.     The News Organizations Have A Right To Seek Disclosure of Grand Jury Materials

Openness is "an indispensable attribute" of our judicial system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980). It guards against unfairness and inequity in the application of laws, as "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*"). Furthermore, access to criminal proceedings "contribut[es] to the public's perception of fairness in the criminal justice system and 'heighten[s] public respect for the judicial process.'" *United States v. Doe*, 63 F.3d 121, 126 (2d Cir. 1995) (quoting *Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 606 (1982)). As the U.S. Supreme Court has explained, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572.

It is well settled that members of the press and public have a right to intervene in a judicial proceeding for the limited purpose of seeking unsealing of court records and proceedings, and "must be given an opportunity to be heard." *Globe Newspaper*, 457 U.S. at 609 n.25 (citation omitted). Moreover, these First Amendment guarantees unquestionably apply to members of the foreign media like the News Organizations. *See Times Newspapers Ltd. v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 192 (C.D. Cal. 1974); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV-12-02943-MMM, 2013 WL 12114762, at *6 (C.D. Cal. Oct. 8, 2013). Indeed, numerous courts have specifically recognized that foreign news organizations have standing to intervene to request the unsealing of documents in both criminal and civil cases. *See, e.g.*, *United States v. James*, 663 F. Supp. 2d 1018, 1020 (W.D. Wash. 2009) (holding Canadian Broadcasting Company has standing under First Amendment and common law to intervene and move to unseal documents in criminal case); *United States v. Ferris*, No. CR-09-0037-LRS, 2009 WL 3672072, at *1 (E.D. Wash. Nov. 4, 2009) (holding Canadian Broadcasting Company had common law right to intervene and move to unseal documents in criminal case); *In re Thow*, 392 B.R. 860 (W.D. Wash. 2007) (same in bankruptcy case).

Hon. Vernon S. Broderick
March 1, 2019
Page 7

**B.      The Court Should Unseal the Requested Documents Pursuant to Federal
         Rule of Criminal Procedure 6(e)(3)(E)(i)**

The Court should order the disclosure of the wire transfer documents in order to avoid a
potential injustice in the Australian Libel Proceeding. Although Second Circuit law is clear that
there is a presumption of secrecy and closure that attaches to grand jury proceedings, Fed. R.
Crim. P. 6(e) provides that a court "may authorize disclosure—at a time, in a manner, and
subject to any other conditions that it directs—of a grand-jury matter . . . preliminarily to or in
connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). As the Second Circuit
has explained, the presumption of secrecy is rebuttable by a showing of "particularized need" for
the disclosure that outweighs the need for secrecy in grand jury proceedings. *In re Grand Jury
Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996).

To satisfy the "particularized need" test, a party seeking disclosure of grand jury
materials must demonstrate "[1] that the material they seek is needed to avoid a possible injustice
in another judicial proceeding, [2] that the need for disclosure is greater than the need for
continued secrecy, and [3] that their request is structured to cover only material so needed."
*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222-23 & n.12 (1979). This standard
is "a highly flexible one . . . and sensitive to the fact that the requirements of secrecy are greater
in some situations than in others." *United States v. Sells Eng'g*, 463 U.S. 418, 445 (1983).
Seldom has a case presented a more compelling and particularized need for disclosure than here.

*First*, the disclosure of this limited set of grand jury materials (wire transfer records
evidencing the $200,000 payment from Dr. Chau's company to Ashe) is critical to avoid a grave
injustice in the Australian Libel Proceeding.[6] Dr. Chau has claimed in the Australian Libel
Proceeding that the statement in the *Four Corners* episode that he is the unindicted co-
conspirator whose company allegedly paid $200,000 to Mr. Ashe to attend the private
conference in China is false and defamatory. With the USAOs' production of the Diplomatic
Note, which confirms that Dr. Chau *is* the unindicted co-conspirator referenced in the Complaint,
it is clear that Dr. Chau made affirmative misrepresentations to the Federal Court of Australia
about the precise facts that form the basis of his libel claim. Indeed, the Diplomatic Note
expressly identifies Dr. Chau as CC-3, e-mails demonstrate that Yan and Piao represented to
Ashe that they could arrange payment of $200,000 to Ashe from Dr. Chau, and other e-mails
reveal that Ashe later confirmed receipt of the payment. Having obtained these documents from
the USAO, the only missing link in proving the News Organizations' truth defense is the actual
wire transfer documents and bank records demonstrating that Dr. Chau's company actually paid

_____

[6] The third element of the particularized need test is plainly satisfied here, as the News Organizations seek the
unsealing of only those documents that demonstrate the $200,000 payment from Dr. Chau or his company to Ashe –
i.e., the wire transfer documents specifically referred to in paragraph 49 of the Complaint. This narrow set of wire
transfer documents is necessary to defend against the Australian Libel Proceeding, and requires the disclosure of no
more than necessary to achieve these ends.

Hon. Vernon S. Broderick
March 1, 2019
Page 8

the $200,000 bribe to Ashe. We know that the USAO has these banking records in its possession as Paragraph 49(f) of the Complaint expressly provides "On November 4, 2013, ASHE's PGA account-2 received a $200,000 wire from China from one of CC-3's companies." Attachment 2, Exhibit 1 ¶ 49(f). Ordering disclosure of these crucial wire transfer records will unquestionably "avoid a potential injustice" (*Douglas Oil*, 41 U.S. at 222-23) in the Australian Libel Proceeding where the News Organizations must proffer hard evidence of Dr. Chau's $200,000 payment to Ashe in order to reinstate – and ultimately prove – their truth defense.

*United States v. Watkins*, 623 F. Supp. 2d 514 (S.D.N.Y. 2009) is instructive. There, the petitioner sought disclosure of a criminal defendant's pre-sentence report – a document that is considered highly confidential and which may only be disclosed to third parties "upon a showing that there is a compelling need for disclosure to meet the ends of justice." *Id.* at 516 (citing *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1171 (2d Cir. 1983)).[7] In the PSR, Watkins claimed that his financial condition rendered him unable to pay for counsel and accordingly the Court appointed a lawyer to represent him. Nevertheless, Watkins asserted in a pending state court lawsuit against the petitioner that he had invested $600,000 in a real estate development corporation with the petitioner only twenty days after pleading guilty. In other words, Watkins made representations in the state court civil suit that were at odds with the statements he made to the probation department. Accordingly, Judge Rakoff ordered disclosure of relevant portions of Watkins' PSR to judicially estop Watkins from asserting contrary facts in the separate state civil lawsuit related to his financial condition. The same considerations should animate the Court here. Just as in *Watkins*, Dr. Chau is making allegations in the Australian libel case that are directly at odds with the evidence adduced in the Ashe Proceedings – specifically, that Dr. Chau's company did indeed make the $200,000 payment to Ashe, a payment that has led to guilty pleas to bribery charges. The Court must not permit Dr. Chau to misrepresent the facts to the Australian court. The release of these limited documents obtained via grand jury subpoena will estop him from making such claims and prevent a potential injustice.

**Second**, the need for disclosure of the wire transfer records here far exceeds the need for continued secrecy. The Supreme Court has articulated a number of reasons for maintaining the secrecy of grand juries. These include:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has

---

[7] It bears noting that the "compelling need" standard is a much higher bar than the "particularized need" standard at issue here.

Hon. Vernon S. Broderick
March 1, 2019
Page 9

been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil*, 441 U.S. at 219 n.10.  None of these concerns is implicated here.

First, there is no risk that anyone subject to indictment will escape due to the release of the requested information.  Only four individuals were involved in the transactions at issue: Ashe, Piao, Yan, and CC-3 (now known to be Dr. Chau).  Ashe is dead and both Piao and Yan have already pled guilty to bribery.  As for Dr. Chau, there is a five-year statute of limitations on each of the crimes charged in the Complaint, 18 U.S.C. § 3282, and the most recent act involving Dr. Chau described in the Complaint occurred on November 13, 2013.  *See* Compl. ¶ 49.  Thus, there is no possibility that the Government will charge Dr. Chau in relation to these grand jury materials.  In any event, Dr. Chau lives in China and Australia, and as such, he cannot "escape" from the U.S. since he is not physically here.

Second, disclosure of the requested materials will in no way impinge on the freedom of grand jury deliberations, or enable those subject to indictment or their friends to harass grand jurors or suborn perjury or tampering with witnesses.  The News Organizations do not request any grand jury testimony, minutes, or the identities of grand jurors or witnesses.  Rather, all that they request are specific banking documents obtained by the USAO via grand jury subpoena.  Such a disclosure does not raise any of these concerns.

Third, there is no risk of discouraging free disclosures by persons with information with respect to the commission of crimes in general.  It is now public record that Dr. Chau is CC-3 and that the U.S. Government has information confirming that he facilitated the payment of $200,000 to Ashe through Yan and Piao.  The unsealing of the specific wire transfer documents will have no broader effect as they will reveal no new confidential information.

Lastly, the U.S. Attorney's Office has confirmed that Dr. Chau is unindicted co-conspirator, CC-3 – he is neither innocent nor "exonerated" in any sense.

Simply put, none of the reasons for maintaining grand jury secrecy outlined by the *Douglas Oil* Court is present here.   When balanced against the need to avoid injustice in the Australian Libel Proceeding, it is clear that disclosure of these materials is warranted and appropriate.

\*     \*     \*

The News Organizations unquestionably have a compelling and particularized need for access to the narrow set of grand jury materials they seek (i.e., documentary evidence of the $200,000 wire transfer to Ashe), and the public interest in preventing Dr. Chau from perpetuating a fraud on the Australian Court far outweighs any need for grand jury secrecy.

Hon. Vernon S. Broderick
March 1, 2019
Page 10

Accordingly, the News Organizations respectfully request that the Court order the wire transfer documents to be unsealed.

If it would assist the Court in reaching its decision, counsel for the News Organizations respectfully request to be heard at any hearing in this matter.

Respectfully submitted,

Davis Wright Tremaine LLP

Robert D. Balin

cc:     Attorneys of Record (via ECF)